UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                              )
**Atlantic Urological Associates et al.,**    )
                                              )
       **Plaintiffs,**                 )
                                              )    No. 08-CV-00141-RMC
    **v.**                                   )
                                              )
**Michael O. Leavitt, as Secretary of**       )
**United States Department of Health and**    )
**Human Services,**                           )
       **Defendant.**                  )
_____)

**DEFENDANT'S MOTION FOR RECONSIDERATION OF ORDER GRANTING
PRELIMINARY INJUNCTION OR, IN THE ALTERNATIVE, TO REQUIRE THE
POSTING OF SECURITY UNDER RULE 65(c)**

      Defendant, the Secretary of Health and Human Services ("Secretary"), requests that the Court reconsider its Order dated March 31, 2008 (Docket No. 26), granting Plaintiffs' Application for Preliminary Injunction.  That order enjoins the Secretary from enforcing, until trial on the merits or further order of the Court, "that portion of the Final Rule published in the Federal Register on January 3, 2008 (73 Fed. Reg. 404), that permits or requires the application of the Anti-Markup Rule in 42 C.F.R. § 414.50, as revised by the final rule published on November 27, 2007 (72 Fed. Reg. 66,222), to anatomic pathology diagnostic testing services furnished in a centralized building, as defined in the Stark Law (42 U.S.C. § 1395nn(b)(2)(A))." Order at 1.

      Although the Court did not find that it has jurisdiction over complaint, if found that it had jurisdiction to enter a preliminary injunction under the All Writs Act, relying on this Circuit's recent decision in <u>Belbacha v. Bush</u>, No. 07-5258 (D.C. Cir., March 14, 2008).  Unlike <u>Belbacha</u>, however, the Preliminary Injunction issued here was not even arguably necessary to

preserve this Court's jurisdiction to later rule on whether it actually has jurisdiction over the case, (or, for that matter, to determine the merits of plaintiffs' Complaint if the court were to later reject the Secretary's jurisdictional arguments). The All Writs Act provides no jurisdiction here, and the reasoning of Belbacha does not apply to this case.

The Court also erred in entering the Preliminary Injunction based (at least in part) on the Secretary's refusal to continue to hold plaintiffs harmless for any payments they may receive in excess of the payments to which they would be entitled if they do not ultimately prevail. See Memorandum Opinion ("Mem. Op.") dated March 31, 2008 (Docket No. 25) at 2-3. The Court rejected the Secretary's proposal, which was submitted on March 31, 2008 (Docket No. 23), because the Secretary did not agree to relinquish his right to be made whole in the event plaintiffs did not ultimately succeed on their claims. See Order at 2-3; see also Court Order dated February 8, 2008 (Docket No. 12), approving the parties' prior interim agreement. Because the right to restitution of payments made pursuant to an improperly issued preliminary injunction is the rule rather than the exception, see National Kidney Patients v. Sullivan, 958 F.2d 1127, 1134-1137 (D.C. Cir. 1992), this Court should not have faulted the Secretary for not waiving this right. The Court compounded the error when it failed to order posting of security as required by Rule 65(c) of the Federal Rules of Civil Procedure.

Because of these critical errors, the Secretary requests that the Court reconsider its decision and vacate the Preliminary Injunction. In the alternative, the Court should require that plaintiffs post security as mandated by Rule 65(c) so that, in the event they do not ultimately succeed on the merits, the Secretary will be able to recoup any payments made to them for claims submitted after April 1, 2008 that exceed the payments to which they would have been

entitled under the November 2007 final anti-markup rule.[1]

## 1. Standards Governing Reconsideration

This court has broad discretion to grant a motion for reconsideration "as justice requires." See Childers v. Slater, 197 F.R.D. 185, 190 (D.D.C. 2000), citing Fed. R. Civ. P. 60(b), Advisory Committee Notes ("interlocutory judgments are not brought within the restrictions of [Rule 60(b)], but rather they are left subject to the complete power of the court rendering them to afford such relief from them *as justice requires*")(emphasis added).

In Powell v. Castaneda, 247 F.R.D. 179 (D.D.C. 2007), the Court explained that the "as justice requires" standard "amounts to determining 'whether reconsideration is necessary under the relevant circumstances,'" id. at 181, citing Cobell v. Norton, 224 F.R.D. 266, 272 (D.D.C. 2004). More recently, in Defense of Animal v. NIH, 527 F. Supp. 2d 23 (D.D.C. 2007), Judge Kollar-Kotelly stated: "Considerations a court may take into account under the 'as justice requires' standard include whether the court 'patently' misunderstood the parties, made a decision beyond the adversarial issue presented, made an error in failing to consider controlling decisions or data, whether a controlling or significant change in the law has occurred," id. at 28-29, citing Singh v. George Washington Univ., 383 F. Supp. 2d 99, 101 (D.D.C. 2005).

The Court further explained:

> Cobell also suggests that even if justice does not "require" reconsideration of an interlocutory ruling, a decision to reconsider is nonetheless within the court's discretion: "[E]ven if the appropriate legal standard does not indicate that reconsideration is warranted, the Court may nevertheless elect to grant a motion for reconsideration if there are other good reasons for doing so." Id. at 540. However, the efficient administration of justice requires that a court at the very least have good reason to reconsider an issue which has already been litigated by the parties: "The

---

[1] Plaintiffs oppose this motion.

>district court's discretion to reconsider a non-final ruling is, however, limited by the law of the case doctrine and 'subject to the caveat that where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'" <u>Singh</u>, 383 F. Supp.2d at 101 (quoting <u>In re Ski Train Fire in Kaprun, Austria</u>, 224 F.R.D. 543, 546 (S.D.N.Y.) 2004)). Thus, if the court chooses to reconsider a motion even if justice does not so require, there must be a "good reason" underlying the parties' re-addressing an already decided issue.

527 F. Supp. 2d at 29.

The Secretary's request for reconsideration of the Preliminary Injunction is "necessary under the relevant circumstances" of this case, and there are "good reasons" for reconsideration both of the Court's determination that it had jurisdiction under the All Writs Act, 28 U.S.C. § 1651(a), to grant the Preliminary Injunction without first ruling on the Secretary's pending Motion to Dismiss, and of the Court's implicit conclusion that the Secretary should not be allowed to seek restitution of any overpayments made by the Medicare trust fund pursuant to the Preliminary Injunction in the event plaintiffs do not ultimately prevail. Reconsideration is further warranted because the Court overlooked the requirement that plaintiffs post adequate security, as mandated by Rule 65(c).

## 2. **The Court Erred in Determining That it Had Jurisdiction Under the All Writs Act**

In issuing the Preliminary Injunction, the Court correctly noted that the Secretary's pending Motion to Dismiss the Complaint asserts that the Court lacks subject-matter jurisdiction over plaintiffs' claims due to plaintiffs' failure to exhaust administrative remedies under the Medicare Act, as required by the Supreme Court's decision in <u>Shalala v. Illinois Council on Long Term Care, Inc.</u>, 529 U.S. 1 (2000),[2] and that plaintiffs lack standing to assert their claims.

---

[2] Indeed, as the Secretary has argued, plaintiffs fail even to meet the non-waivable presentment requirement.

The Court recognized that "the plaintiff has the burden of establishing that the court has subject-matter jurisdiction." Mem. Op. at 5. Although the Court stated that it "has not decided the jurisdictional issues," it concluded that it "need not do so prior to entering a preliminary injunction." Id.

In reaching this conclusion, the Court cited the D.C. Circuit's recent decision in Belbacha v. Bush, No. 07-5258 (D.C. Cir. Mar. 14, 2008), as holding that, "under the All Writs Act, the district court retains authority to preserve the status quo by issuing a preliminary injunction." Mem. Op. at 5-6. However, the Court of Appeals' decision in Belbacha v. Bush does not support this Court's issuance of a preliminary injunction here. The Belbacha decision arose in the context of a Guantanamo detainee seeking to block his transfer to Algeria, where he would allegedly be subject to "torture at the hands of a foreign state and of a terrorist organization," during the pendency of review on certiorari in Boumediene v. Bush, 476 F.3d 981 (D.C. Cir. 2007), cert. granted, 75 U.S.L.W. 3707 (June 29, 2007). Such transfer by the government of the detainee would have divested the Court of any jurisdiction to adjudicate the habeas petition in that case should Boumediene be overturned -- not to mention the alleged consequences to the detainee if he were to be transferred to Algeria in the interim. See Belbacha, Slip op. at 9 ("Belbacha's transfer would make it impossible for the district court to entertain his claim to relief that the Constitution might guarantee."). The D.C. Circuit held that, during the pendency of review on certiorari of a colorable jurisdictional issue, and in the absence of a mandate (which had been issued by this Circuit but then withdrawn), a court retains the power to enter a preliminary injunction to prevent action that would defeat the court's putative jurisdiction, where the standards for obtaining such injunctive relief are met. Id. at 7.

The holding in Belbacha has no application to this case. The Court is not being asked to enter injunctive relief to prevent action by the government that would altogether defeat arguable jurisdiction and would result in alleged grave physical harm. Notably, Plaintiffs' Application for Preliminary Injunction fails to identify any proposed action by the Secretary that would deprive this Court of jurisdiction to hear the merits of plaintiffs' claims if a preliminary injunction were not issued. Unlike the situation in Belbacha, where the Court of Appeals emphasized that the purpose of any injunctive relief entered under the All Writs Act, 28 U.S.C. § 1651(a), would be "to preserve the status quo" pending review on certiorari, no decision relevant to the jurisdictional question here is currently on appeal, and plaintiffs seek preliminary and permanent injunctions to *alter* the status quo, and to *prevent* the application of the November 2007 final anti-markup rule, which was effective as of January 1, 2008 to plaintiffs' billing for anatomic pathology diagnostic testing performed in a centralized building that is not the billing physician's office building. The relief awarded by the Court in the Preliminary Injunction is not authorized by the All Writs Act, "which encompasses a limited judicial power to preserve the status quo while administrative proceedings are in progress and to prevent impairment of the effective exercise of appellate jurisdiction." Heckler v. Redbud Hosp. Dist., 473 U.S. 1308, 1313-14 (1985) (Rehnquist, J., in chambers) (staying part of a preliminary injunction issued against the Secretary of HHS under the All Writs Act as overly broad and unnecessary to prevent the impairment of the effective exercise of appellate jurisdiction).

Unhinged from any of the circumstances found in Belbacha, the Court is required to rule on the issue of subject-matter jurisdiction -- or at least on the likelihood that the Court has subject matter jurisdiction -- before considering Plaintiffs' Application for Preliminary

Injunction.  See Action Alliance of Senior Citizens v. Leavitt, 483 F.3d 852, 856 (D.C. Cir. 2007) (vacating a portion of preliminary injunction because the district court lacked jurisdiction to entertain a claim that had not first been presented to the Secretary of HHS); see also Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998) ("'Without jurisdiction [a] court cannot proceed at all in any cause.  Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.'" (quoting Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1868)); see also Redbud Hosp. Dist., 473 U.S. at 1313-14.  For this reason, the Court erred in determining that it had jurisdiction to issue the Preliminary Injunction under the All Writs Act.[3]

**3.    The Court Erred in Implicitly Requiring the Secretary to Waive his Right to Recover Any Excess Payments Made Under the Preliminary Injunction in the Event Plaintiffs Ultimately Do Not Prevail**

In entering the Preliminary Injunction, the Court found insufficient the Secretary's proposal to continue to delay enforcement of the November 2007 final anti-markup rule until May 1, 2008, because the Secretary had not also once again voluntarily agreed to hold plaintiffs harmless for any Medicare payments in excess of those authorized by the November 2007 final anti-markup rule in the event plaintiffs did not ultimately prevail on the merits.  See Mem. Op. at 2-3.  The Court faulted the Secretary for not relinquishing his right to recoup excess payments, stating that, "[i]n other words, the Secretary would have the Final Rule take effect."  Id.

---

[3] The Court also erred in framing the Preliminary Injunction so that it would apply to all anatomic pathology diagnostic testing services, rather than being directed solely to those services furnished by *plaintiffs*.  The broad scope of the Preliminary Injunction, which bars the Secretary from applying the final anti-markup rule even as to services provided by *non-parties*, exceeds this Court's jurisdiction.

The Secretary, however, had agreed to accommodate the Court's schedule by *not* implementing the challenged rule for the month of April 2008. See Docket No. 23. During the month of April 2008, claims for anatomic pathology diagnostic testing services rendered in 2008 would be processed under the pre-existing payment methodology, without regard to the Secretary's November 2007 final anti-markup rule. Even if the Court had *already* entered a preliminary injunction on its own (as happened later that day), the Secretary would be entitled to recoup any excess payments under that injunction *unless* plaintiffs ultimately prevail on the merits. Indeed, the very purpose of Rule 65(c) of the Federal Rules of Civil Procedure, discussed infra, is to protect a defendant's right to be made whole (i.e., to recoup erroneous payments) if plaintiffs' claims do not ultimately succeed, and to ensure that there are sufficient funds available for restitution in precisely these circumstances. The Court erred in entering the Preliminary Injunction based on the Secretary's refusal to relinquish his right to be made whole if the plaintiffs do not ultimately prevail.

**4.      The Court Erred in Failing to Require that Plaintiffs Post Security Under Rule 65(c)**

Rule 65(c) of the Federal Rules of Civil Procedure provides:

> **Security**. The court may use a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. The United States, its officers, and its agencies are not required to give security.

The Court's issuance of the Preliminary Injunction without "the giving of security by the applicant" violates Rule 65(c). As noted above, in the event the Preliminary Injunction entered by this Court is eventually dissolved, the Secretary will be entitled to recoup overpayments during the months that the injunction was in effect. Parties damaged by wrongfully issued

injunctions are entitled to be made whole.  See Arkadelphia Milling Co. v. St. Louis Southwest Ry. Co., 249 U.S. 134, 145 (1919); National Kidney Patients Ass'n v. Sullivan, 958 F.2d 1127, 1134 (D.C. Cir. 1992).  The purpose of the requirement for security imposed by Rule 65(c) is to enable the enjoined party to secure indemnification for costs and pecuniary injury that may accrue during the period in which a wrongfully issued injunction remains in effect.  See National Kidney Ass'n, 958 F.2d at 1134-35; Monzillo v. Biller, 735 F.2d 1456, 1461 (D.C. Cir. 1984).  Indeed, the Secretary retains his right to be made whole (through recoupment or otherwise) for any erroneous payment if the Rule 65(c) security is insufficient.   See National Kidney Ass'n, 958 F.2d at 1134-35.

   The D.C. Circuit applied these principles in the context of the district court's entry of a preliminary injunction in a case that (like this one) challenges a new Medicare payment policy.  In National Kidney Patients Association, Medicare beneficiaries receiving kidney dialysis and the dialysis providers sued the Secretary to overturn a Medicare payment limitation that plaintiffs claimed was illegal and would deprive the plaintiff patients of critically needed dialysis offered by the plaintiff providers, with whom these patients had a direct and longstanding relationship.[4]  In requesting a preliminary injunction, the dialysis providers also claimed – as Uropath and Dr. Sam Michaels claim here – that they would be forced out of business if the challenged payment rule was not enjoined, because they could not afford to continue providing dialysis services at the rates applied under the new policy.  After the Secretary immediately sought summary reversal of the district court's refusal to require that a bond be posted, the D.C. Circuit ordered the district court to require that plaintiffs post a bond to ensure repayment.  Id.,

---

[4] Plaintiffs make no such claims here, and plaintiffs do not include Medicare patients.

958 F.2d at 1129, citing previous Order No. 89-5039 (D.C. Cir. 1989).[5]  The Court of Appeals also reversed the district court's ruling that prevented the Secretary from recovering damages arising from the wrongfully imposed injunction by collecting the amount of the bond or proceeding through the agency's administrative procedures for recoupment of excess payments. Id. at 1137.

None of the narrow exceptions to the mandatory security requirement of Rule 65(c) applies here.  This is not a case where the enjoined party will suffer no damages because of the injunction.  See Federal Prescription Serv. v. American Pharm. Ass'n, 636 F.2d 755, 759 (D.C. Cir. 1980).  Instead, the Medicare trust fund will be forced to make additional payments which may ultimately be found to have been unwarranted if plaintiffs do not ultimately prevail.  Nor are plaintiffs indigent citizen-enforcers of a public interest law who would be denied their day in court if a sufficient bond and the right of recoupment are ordered in conformity with Rule 65(c). See Natural Res. Def. Council v. Morton, 337 F. Supp. 167 (D.D.C. 1971), aff'd on other grounds, 458 F.2d 827 (D.C. Cir. 1972).  Instead, Uropath and the three plaintiff physician groups are sophisticated commercial entities, and the associated physicians have voluntarily chosen to participate in the regulated Medicare program, with full knowledge that payment methodologies and rates are subject to change.

---

[5] The D.C. Circuit reversed the district court again when it required that only a nominal bond be provided, and ultimately reversed and vacated the injunction *in its entirety* for lack of jurisdiction due to failure to exhaust administrative remedies, the same jurisdictional bar (in addition to plaintiffs' lack of standing) that exists here.

In seeking a preliminary injunction, plaintiffs alleged that their businesses will collapse immediately if the November 2007 final anti-markup rule is applied to anatomic pathology diagnostic testing services. In issuing the Preliminary Injunction, the Court concluded that such alleged speculative harm was sufficient to constitute irreparable injury, even *for even a single month*. In light of plaintiffs' allegations, it is particularly important to protect the Medicare trust fund by ensuring that sufficient funds are available to repay that fund if plaintiffs do not ultimately prevail. By failing to require security, the Court has established a rule that may encourage litigants to mount premature and baseless challenges to payment rules for Medicare or other federal programs because, even if the government is ultimately vindicated, the agency would have no recourse and plaintiffs could then assert inability to pay.[6] This failure alone is reversible error.

## CONCLUSION

For these reasons, the Court should reconsider its March 31, 2008 decision, vacate the Preliminary Injunction, and either accept the Secretary's March 31 proposal or, at a minimum, limit the scope of the injunction to the services provided by plaintiffs and require that they post security so that the Medicare trust fund will be protected if plaintiffs do not ultimately prevail.

Plaintiffs oppose this motion, as discussed in a telephone conversation between Peter Wechsler and Dan Peterson on April 8, 2008.

---

[6] By contrast, plaintiffs would not "lose their business," Mem. Op. at 8, if security were posted as required by Rule 65(c) because, while the Preliminary Injunction remains in effect, they would continue to receive payments above the payments to which they would be entitled if the challenged rule were implemented.

11

Dated: April 8, 2008

                                                             Respectfully Submitted:

                                                             JEFFREY S. BUCHOLTZ
                                                             Acting Assistant Attorney General

                                                             JEFFREY A. TAYLOR
                                                             United States Attorney

                                                             Sheila M. Lieber
                                                             Deputy Branch Director

                                                             */s/ Peter T. Wechsler*
                                                             Peter T. Wechsler (MA 550339)
                                                             Trial Attorney
                                                             United States Department of Justice
                                                             Civil Division
                                                             Federal Programs Branch
                                                             20 Massachusetts Avenue, N.W.
                                                             Washington, D.C. 20530
                                                             Tel.: (202) 514-2705
                                                             Fax: (202) 616-8470
                                                             Email: peter.wechsler@usdoj.gov
                                                              *Attorneys for Defendant*