IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ATLANTIC UROLOGICAL ASSOCIATES, P.A.; SAM MICHAELS, M.D.; REBECCA PAGE; UROLOGY CARE, INC.; UROLOGY CENTER OF ALABAMA, P.C.; and UROPATH, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL O. LEAVITT, in his official capacity as Secretary, United States Department of Health and Human Services,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 1:08-cv-00141-RMC<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MOTION TO CLARIFY OR AMEND ORDER

NOW COME Plaintiffs, Atlantic Urological Associates <u>et al.</u>, and pursuant to Rule 59(e), Fed. R. Civ. P., hereby seek clarification or amendment of the Court's Order dated May 5, 2008.

On March 31, 2008, the Court entered an Order granting a preliminary injunction, enjoining Defendant from enforcing the anti-markup rule (42 C.F.R. § 414.50, as revised by the final rule published on November 27, 2007 (72 Fed. Reg. 66,222)) until trial on the merits or until further order of the Court. The Court took this action because Defendant "insist[ed] on retaining the right to recoupment" after April 1, 2008, and instead of delaying the rule while the Court considered the case, Defendant "would have the Final Rule take effect." Memorandum Opinion (March 31, 2008) at 3. The Court expressly found that under the All Writs Act, 28 U.S.C. § 1651, the district court "retains the authority to preserve the status quo by issuing a preliminary injunction." Memorandum Opinion (March 31, 2008) at 6.

When the Court issued its decision on May 5, 2008, the Court's Order and Memorandum Opinion stated that the preliminary injunction was vacated, but was silent as to whether Defendant was prohibited from recoupment on claims submitted between April 2 and May 5, 2008.  For the reasons stated in the accompanying Memorandum in Support, Plaintiffs therefore request that the Court enter a clarifying Memorandum, or that it amend its Order dated May 5, 2008, to recognize that the preliminary injunction Order of March 31, 2008, was validly issued under the All Writs Act, 28 U.S.C. § 1651, and Belbacha v. Bush, No. 07-5258, 2008 WL 680637 (D.C. Cir. Mar. 14, 2008), and that the Court had authority to issue the injunction; that the preliminary injunction prevented the revised anti-markup rule (42 C.F.R. § 414.50, as revised by 72 Fed. Reg. 66, 222 (Nov. 27, 2007)) from being implemented or taking effect during the period April 2, 2008, through May 5, 2008; that Plaintiffs and other physician groups operating laboratories that furnished anatomic pathology diagnostic testing services in a "centralized building" under Stark law definitions were entitled to rely on the Court's order during that time period; and that Defendant therefore is not permitted to recoup any amounts paid, or to reduce or deny amounts to be paid, for claims submitted during such time period on grounds that the revised anti-markup rule is or was applicable to said claims.

Pursuant to Local Rule 7(m) the undersigned counsel states that on May 15, 2008, after business hours, he left word on the voicemail system for Peter Wechsler, counsel for Defendant, to determine whether Defendant agrees to or opposes this Motion.  Counsel for Plaintiffs will promptly file an updated certificate with the Court when he hears back from Mr. Wechsler.

Respectfully submitted,

FULBRIGHT & JAWORSKI, L.L.P.

May 15, 2008

/s/ Dan M. Peterson
Dan M. Peterson
D.C. Bar No. 418360
Ashley E. Seuell
D.C. Bar No. 494170
Caroline Mew
D.C. Bar No. 467354
801 Pennsylvania Avenue N.W.
Washington, D.C. 20004
Telephone:  (202) 662-0200
Facsimile:  (202) 662-4643
Attorneys for Plaintiffs

Greg A. Cardenas
Byrne, Cardenas & Smitherman, LLP
5400 LBJ Freeway, Suite 1325
Dallas, TX 75240
Telephone:  (972) 371-5264
Facsimile:  (972) 371-5270
Of Counsel

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ATLANTIC UROLOGICAL ASSOCIATES, P.A.; SAM MICHAELS, M.D.; REBECCA PAGE; UROLOGY CARE, INC.; UROLOGY CENTER OF ALABAMA, P.C.; and UROPATH, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> MICHAEL O. LEAVITT, in his official capacity as Secretary, United States Department of Health and Human Services, <br><br> Defendant. | Civil Action No. 1:08-cv-00141-RMC |

## MEMORANDUM IN SUPPORT OF MOTION TO CLARIFY OR AMEND ORDER

1.  On or about January 25, 2008, Plaintiffs filed their Complaint, Application for Preliminary Injunction, and Statement of Points and Authorities in Support of the Application. Among other relief, Plaintiffs sought to enjoin the application of the January 3, 2008, Final Rule, insofar as it applied the anti-markup rule as revised on November 27, 2007, to anatomic pathology diagnostic testing services furnished in a "centralized building" that is not the "same building" under Stark law definitions. Plaintiffs also contested the validity of the November 27, 2007, anti-markup rule itself.

2.  On February 4, 2008, Defendant filed a document styled Defendant's Motion to Endorse His Interim Proposal, Postpone Hearing on Plaintiff's Application for Preliminary Injunction, and Set Consolidated Briefing Schedule ("Motion to Endorse Proposal"). In that Motion to Endorse Proposal and the accompanying Proposed Order, Defendant stated that the Centers for Medicare and Medicaid Services ("CMS") will not apply the anti-markup rule to

claims submitted between February 1 and April 1, 2008, for anatomic pathology diagnostic testing services furnished in a "centralized building."  Defendant further stated that the Secretary shall not recoup payments made on those claims on grounds that the services were furnished in a "centralized building" that does not qualify as the "same building" under the Stark law.

3. On February 5, 2008, Plaintiffs agreed to the Motion to Endorse Proposal.  During the Scheduling Conference held on February 7, 2008, the Court asked counsel for Defendant if the government would agree to extend that agreement for another thirty to sixty days after April 1, to allow the Court time to decide this case.  The government declined to do so at that time.  In a subsequent telephone hearing between the Court and counsel, the government again refused to do so.  On February 8 the Court entered the proposed order as an Order of the Court.

4. At the preliminary injunction hearing held on Friday, March 28, 2008, the Court again requested that the government agree to extend the agreement not to apply the anti-markup rule and not to recoup for another thirty days.  Tr. 55-56, 67, 72.  The Court described at some length the case of Belbacha v. Bush, No. 07-5258, 2008 WL 680637 (D.C. Cir. Mar. 18, 2008). The Court noted that the D.C. Circuit held in that case that "I do have jurisdiction under the All Writs Act to issue an injunction while I consider whether I have jurisdiction."  Tr. 60.  As stated by the Court, "I have authority to issue an injunction in this case while I consider whether I have jurisdiction in this case."  Id.  The Court gave counsel for the Defendant until noon on Monday, March 31st, to respond to the Court's request.  Tr. 72.

5. On March 31st, the Defendant filed a document with the Court stating that Defendant "will not at this time apply the anti-markup rule," and contending that he "reserves the right to recoup any Medicare payments in excess of the amounts that would be permissible under

the anti-markup rule for any such claims submitted between April 2 and May 2, 2008…." (emphasis added).

6. Plaintiffs opposed this proposal by Defendant, and later that day, the Court issued the Memorandum Opinion granting the preliminary injunction, together with an Order enjoining the Defendant from enforcing the regulations applying the anti-markup rule until trial on the merits or until further order of the Court.

7. In issuing the preliminary injunction, the Court expressly relied on the All Writs Act, 28 U.S.C. § 1651, and <u>Belbacha</u>, Memorandum Opinion (March 31, 2008) at 5-6. The question was whether the anti-markup rule would go into effect or whether it would not. As stated by the Court, the Secretary was to decide by Monday whether he "is going to give me another 30 days without having the rule go into effect." Tr. 72. "If the Secretary chooses instead to have the rule go into effect" then the Court would decide whether to issue a preliminary injunction. Tr. 72.

8. Because the Secretary in his filing attempted to reserve the right to recoup any difference between payments determined under the anti-markup rule and payments made on claims submitted between April 2 to May 2, the Court concluded: "In other words, the Secretary <u>would have the Final Rule take effect</u>." Memorandum Opinion (March 31, 2008) at 3 (emphasis added). The Court found that "the Secretary has not sufficiently waived its right to <u>implement</u> the Anti-Markup Rule," accordingly granted the preliminary injunction. <u>Id</u>. (emphasis added). In short, the effect of the Court's ruling was to delay implementation of the anti-markup rule and prevent it from taking effect after April 1.

9. On May 5, 2008, the Court issued its Memorandum Opinion and Order, granting Defendant's Motion to Dismiss. The Memorandum Opinion and Order both stated that the

preliminary injunction order is "vacated."  The use of the term "vacated" may be read to suggest that the Court's preliminary injunction Order of March 31 did not operate to prevent CMS from recouping the difference between amounts computed under the revised anti-markup rule, and the physician fee schedule amount which the Plaintiff Physician Groups, other physician groups with Uropath-managed labs, and other physician groups across the country were entitled to bill under the Court's preliminary injunction.  Accordingly, Plaintiffs request clarification of the Court's May 5 Memorandum Opinion and Order, to make it clear that Defendant cannot recoup on claims submitted while the Court's preliminary injunction was in effect.

10. The Court clearly had jurisdiction under the All Writs Act and Belbacha.  As stated in that case, 2008 WL 680637, at *2, "if a case presents a 'substantial' jurisdictional question, then under the All Writs Act, 28 U.S.C. § 1651, a district court may act to preserve its jurisdiction while it determines whether it has jurisdiction."  There need only be a "colorable" claim of jurisdiction for the Court to act, though it cannot be merely an "insubstantial" one.  Id. Here, Plaintiffs raised a colorable jurisdictional claim (at least) under Shalala v. Illinois Council on Long Term Care, 529 U.S. 449 (1999), and the Court believed it was substantial enough to warrant the issuance of an injunction while the Court considered the matter.

11. The Belbacha court noted that some statutes not only deprive the courts of subject matter jurisdiction, but also take away the "remedial powers of the courts."  Belbacha at *4 n.3 (citing the Emergency Price Control Act, which deprived the courts not only of jurisdiction or power to consider the validity of certain regulations, orders, and schedules and also of the power to "restrain" or "enjoin" such provisions).  The Belbacha court stated, however, that "'in the absence of explicit direction from Congress,' [a] court retains authority pursuant to the All Writs Act to preserve [the] status quo when 'necessary to protect its own jurisdiction.'"  Belbacha,

2008 WL 680637, at *4 (summarizing holding in <u>FTC v. Dean Foods Co.</u>, 384 U.S. 597, 608 (1966)). In the case at bar, the Court expressly found that the "injunction will merely maintain the status quo." Memorandum Opinion (March 31, 2008) at 9. And because the statutes allegedly depriving the Court of jurisdiction in this case do not purport to strip the Court of its remedial powers, an injunction under the All Writs Act was appropriate.

12. In his Motion for Reconsideration filed on April 8, 2008, Defendant recognized that the effect of the preliminary injunction was to prevent recoupment even if Plaintiffs did not prevail. He stated in that Motion that the "Court erred in implicitly requiring the Secretary to waive his right to recover any excess payments made under the preliminary injunction in the event Plaintiffs do not prevail." Motion to Reconsider at 7. Defendant noted "the Court's implicit conclusion that the Secretary should not be allowed to seek restitution of any overpayments made by the Medicare trust fund pursuant to the Preliminary Injunction in the event Plaintiffs do not ultimately prevail." He further admits that the challenged rule has not yet been "implemented." Motion to Reconsider at 11.

13. Because the effect of the preliminary injunction was to delay implementation of the revised anti-markup rule, the reliance interests at stake in this case go beyond those of the three Plaintiff Physician Groups. Nearly 50 other physician groups had Uropath-managed labs during this time period. Furthermore, as both counsel for Plaintiff and counsel for Defendant stated during the preliminary injunction hearing, there are other physician groups throughout the country that have their own anatomic pathology labs that would be affected by the revised anti-markup rule as amended by the January 3, 2008, Final Rule. Tr. 24, 49.

14. If the preliminary injunction is not recognized as preventing recoupment for claims submitted during April 2 – May 5 time period, many physician groups with their own labs

will actually be in a worse position than if the injunction had never issued. If the injunction had not issued, many physician groups would doubtless have sent their specimens to outside labs, thereby avoiding actual losses on each Medicare claim under the revised anti-markup rule. But if the Secretary is allowed to recoup, they will sustain an actual loss on each claim that was submitted in reliance on the preliminary injunction.

15.     Thus, this case is similar to <u>Crocker v. Tennessee Secondary School Athletic Association</u>, 908 F.2d 972, 1990 WL 104036 (6th Cir. 1990) (unpublished opinion). In that case, a federal district court had issued a preliminary injunction that was later dissolved or vacated due to a finding that Plaintiffs had failed to exhaust administrative remedies. In a subsequent case involving sanctions against persons who had relied on the preliminary injunction, the Sixth Circuit held that the injunction was valid and could be relied on to protect conduct engaged in while the injunction was in effect. The Court stated:

> Concerning the issue of sanctions, we hold that because District Judge Nixon had jurisdiction to issue the initial preliminary injunction in this case, Crocker, Metro, and McGavock should not be penalized for actions taken pursuant to that preliminary injunction. The fact that this injunction ultimately was dissolved by this Court because the Crockers had failed to exhaust their administrative remedies does not affect the District Court's jurisdiction to enter the injunction in the first instance.

1990 WL 104036 at *1. The Court continued:

> McGavock High School allowed Crocker to play interscholastic athletics in reliance on District Judge Nixon's initial injunction in this case - in fact, McGavock was obligated to effectuate the District Court's order which prohibited interference with Crocker's ability to play interscholastic athletics. Although this Court later vacated that injunction because Crocker had not exhausted his administrative remedies under the EHA, District Judge Nixon still had jurisdiction to enter the injunction in the first place. The All-Writs Act, 28 U.S.C. § 1651 (1988), gives the District Court authority to issue writs in aid of jurisdiction and to prevent defiance of its orders.

> It would be unfair to penalize McGavock High School for actions that it took in compliance with a District Court order during the pendency of that order.

1990 WL 104036, at *4.

## **CONCLUSION**

Plaintiffs therefore request that the Court clarify or amend its May 5, 2008, Order as stated in the accompanying Motion and Proposed Order.

                                      Respectfully submitted,

                                      FULBRIGHT & JAWORSKI, L.L.P.

May 15, 2008

                                      /s/ Dan M. Peterson
                                      Dan M. Peterson
                                      D.C. Bar No. 418360
                                      Ashley E. Seuell
                                      D.C. Bar No. 494170
                                      Caroline Mew
                                      D.C. Bar No. 467354
                                      801 Pennsylvania Avenue N.W.
                                      Washington, D.C. 20004
                                      Telephone: (202) 662-0200
                                      Facsimile: (202) 662-4643
                                      Attorneys for Plaintiffs

                                      Greg A. Cardenas
                                      Byrne, Cardenas & Smitherman, LLP
                                      5400 LBJ Freeway, Suite 1325
                                      Dallas, TX 75240
                                      Telephone: (972) 371-5264
                                      Facsimile: (972) 371-5270
                                      Of Counsel

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ATLANTIC UROLOGICAL ASSOCIATES, P.A.; SAM MICHAELS, M.D.; REBECCA PAGE; UROLOGY CARE, INC.; UROLOGY CENTER OF ALABAMA, P.C.; and UROPATH, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> MICHAEL O. LEAVITT, in his official capacity as Secretary, United States Department of Health and Human Services, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) Civil Action No. 1:08-cv-00141-RMC ) ) ) ) ) ) ) |

**ORDER**

THE COURT, having considered Plaintiffs' Motion to Clarify or Amend Order, any opposition filed by Defendant, and any argument of counsel with respect thereto, is of the opinion that said Motion should be, and it is hereby, GRANTED.

The Court's Order of May 5, 2008, is hereby clarified and amended to recognize that the preliminary injunction Order of March 31, 2008, was validly issued under the All Writs Act, 28 U.S.C. § 1651, and Belbacha v. Bush, No. 07-5258, 2008 WL 680637 (D.C. Cir. Mar. 14, 2008), and that the Court had authority to issue the injunction; that the preliminary injunction prevented the revised anti-markup rule (42 C.F.R. § 414.50, as revised by 72 Fed. Reg. 66, 222 (Nov. 27, 2007)) from being implemented or taking effect during the period April 2, 2008, through May 5, 2008; that Plaintiffs and other physician groups operating laboratories that furnished anatomic pathology diagnostic testing services in a "centralized building" under Stark law definitions were entitled to rely on the Court's order during that time period; and that Defendant therefore is not

- 2 -

permitted to recoup any amounts paid, or to reduce or deny amounts to be paid, for claims submitted during such time period on grounds that the revised anti-markup rule is or was applicable to said claims.

    SO ORDERED.

    SIGNED on this the _____ day of _____, 2008.


                                                  _____
                                                  United States District Judge

Upon entry, this order is to be served upon the following:

>Dan M. Peterson
>Caroline Mew
>Fulbright & Jaworski L.L.P.
>Suite 500
>801 Pennsylvania Avenue, N.W.
>Washington, DC  20004-2604
>
>Sheila M. Lieber
>Peter T. Wechsler
>United States Department of Justice
>Civil Division
>Federal Programs Branch
>20 Massachusetts Avenue, N.W.
>Washington, DC 20530