IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ATLANTIC UROLOGICAL ASSOCIATES, P.A.; et al., | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )<br>) |
| MICHAEL O. LEAVITT, in his official capacity as Secretary, United States Department of Health and Human Services, | ) Civil Action No. 1:08-cv-00141-RMC<br>)<br>)<br>) |
| Defendant. | )<br>) |

**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION
TO MOTION TO CLARIFY OR AMEND ORDER**

In Defendant's Opposition to Plaintiffs' Motion to Clarify or Amend Order ("Opp."), Defendant makes two principal arguments. First, Defendant contends that CMS retains a right to recoup a portion of Medicare fee schedule payments made for claims submitted in reliance on the Court's preliminary injunction, citing National Kidney Patients Assn. v. Sullivan, 958 F.2d 1127 (D.C. Cir. 1992). Second, Defendant argues once again that this Court lacked jurisdiction under the All Writs Act, 28 U.S.C. § 1651, to issue the preliminary injunction. The first argument misunderstands the nature, basis, and effect of the Court's preliminary injunction order. The second simply reargues a point already correctly decided by this Court pursuant to clear D.C. Circuit authority.

**I.   THE NATIONAL KIDNEY PATIENTS CASE DOES NOT APPLY WITH RESPECT TO RECOUPMENT IN THIS CASE.**

The purpose of the preliminary injunction issued on March 31 was to prevent the revised anti-markup rule from going into effect. Since that rule was not in effect during the time covered

by the preliminary injunction, the Secretary has no right of recoupment for any portion of claims submitted during that time period.

The Court requested during the March 28 preliminary injunction hearing that the Secretary voluntarily give the Court "another 30 days without having the rule go into effect," and asked the Secretary to inform the Court by the following Monday whether he would do so. Tr. 72. The Court would then have to decide whether to issue a preliminary injunction if "the Secretary chooses instead to have the rule go into effect." Id.

The Secretary responded by stating that he "will not at this time apply the anti-markup rule," but also by contending that he "reserves the right to recoup any Medicare payments in excess of the amounts that would be permissible under the anti-markup rule for any such claims submitted between April 2 and May 2, 2008…." (emphasis added). Defendant's Proposal to Extend Interim Agreement (March 31, 2008). The Court correctly noted that by reserving a right of recoupment, "the Secretary would have the Final Rule take effect." Memorandum Opinion (March 31, 2008) at 3 (emphasis added). The Court's expressed reason for granting the preliminary injunction was because "the Secretary has not sufficiently waived its right to implement the Anti-Markup Rule," and because of the purported reservation of a right to recoup. Id. (emphasis added). In granting the preliminary injunction, the Court relied on the All Writs Act, 28 U.S.C. § 1651, and Belbacha v. Bush, No. 07-5258, 2008 WL 680637 (D.C. Cir. Mar. 14, 2008).

Thus, the Court's actions were clear on their face at the time the preliminary injunction was issued: the Court enjoined the rule from going into effect, and there would be no later right of recoupment for claims submitted while the injunction was in effect. Defendant himself has admitted that the Court's preliminary injunction prevented any right of recoupment even if

Plaintiffs did not prevail, and that it prevented the revised anti-markup rule from being "implemented." See Memorandum in Support of Motion to Clarify or Amend Order at 5 (quoting from and citing to statements in Defendant's Motion to Reconsider).

Defendant's reliance on National Kidney Patients to reach a different result is misplaced. In National Kidney Patients, the only basis for jurisdiction for issuance of the preliminary injunction was federal question jurisdiction pursuant to 28 U.S.C. § 1331. The Court of Appeals ultimately found that federal question jurisdiction was lacking, and thus the sole jurisdictional basis supporting issuance of the preliminary injunction in that case was removed.

In the case at bar, however, the Court did not rely upon general federal question jurisdiction in issuing the injunction. In fact, the Court expressly reserved decision on that issue and instead relied upon the All Writs Act as recently interpreted by the D.C. Circuit in Belbacha. Memorandum Opinion (March 31, 2008) at 5-6. Belbacha held that "if a case presents a 'substantial' jurisdictional question, then under the All Writs Act, 28 U.S.C. § 1651, a district court may act to preserve its jurisdiction while it determines whether it has jurisdiction." Belbacha, 2008 WL 680637, at *2. That includes issuance of a preliminary injunction, as was done in Belbacha itself. The Court observed in the March 28 hearing in this case that Belbacha "changes the law of injunctions, I think." Tr. 60.

Belbacha is a more recent case, and involves the propriety of issuing an injunction under the All Writs Act while a substantial jurisdictional question is being determined. It holds that an injunction may be validly issued under those circumstances. Thus, it is Belbacha that controls here, not the earlier decision in National Kidney Patients, which did not involve a preliminary injunction under the All Writs Act while jurisdiction was being determined. As noted in National Kidney Patients, with respect to restitution and relief on a bond, "the law draws a vital

distinction…between a valid and an invalid decree." National Kidney Patients, 958 F.2d at 1129. Here, the injunction was validly issued under the All Writs Act and Belbacha, the Court expressly found that it had jurisdiction to take this action, that finding has not been reversed, and the implementation of the anti-markup rule did not take effect during the time period covered by the injunction. Defendant is consequently is not entitled to "recoupment" during the time period when the revised anti-markup rule was not in effect because its implementation was delayed by a valid court order.

Defendant contends that "Uropath and the three Plaintiff Physician Groups are sophisticated commercial entities, as are the other non-party physician groups" that would be harmed by granting Defendant a right to recoup, and that they had "full knowledge that payment methodologies and rates are subject to change" in the regulated Medicare program. Opp. at 5. The question is not whether these entities had "full knowledge that payment methodologies and rates are subject to change." The Court's preliminary injunction order was issued to prevent a proposed change in payment methodologies, and on its face stated that the anti-markup rule was enjoined. The question, therefore, is whether the Court's order was valid under the All Writs Act and Belbacha. It was, as the Court itself determined.

Defendant further argues that Plaintiffs "were on notice" that if the preliminary injunction were later vacated, "the Secretary would be entitled to recoup," citing National Kidney Patients. Opp. At 5. He further contends that if "plaintiffs or other physician groups rendered services based on the assumption" that there would be no recoupment, "the Secretary is not responsible for that flawed business judgment." Opp. at 5.

Plaintiffs were emphatically not "on notice" that recoupment would later be permitted. On the contrary, the reason given by the Court for granting the preliminary injunction was that

the Secretary would not agree to forego recoupment. Memorandum Opinion (March 31, 2008) at 3. And it is odd, indeed, for Defendant to argue that Plaintiffs were "on notice" that the preliminary injunction did not prevent recoupment, when Defendant himself at the time interpreted the Court's order as barring recoupment even if Plaintiffs did not ultimately prevail. In Defendant's Motion to Reconsider, filed April 8, 2008, Defendant contended that the "Court erred in implicitly <u>requiring the Secretary to waive his right to recover any excess payments</u> made under the preliminary injunction <u>in the event Plaintiffs do not prevail</u>." Motion to Reconsider at 7 (emphasis added). Defendant complained of "the Court's implicit conclusion that <u>the Secretary should not be allowed to seek restitution</u> of any overpayments made by the Medicare trust fund pursuant to the Preliminary Injunction <u>in the event Plaintiffs do not ultimately prevail</u>." Motion to Reconsider at 4 (emphasis added). It is not "flawed business judgment" for litigants and others to rely on a preliminary injunction order entered by a federal court, when the order plainly prevents recoupment, when the federal court has expressly found that it has jurisdiction to enter that order, and when the Defendant himself interpreted the order as barring recoupment.

Defendant characterizes as "misplaced" any view that a physician group could rely on an injunction issued in a case to which it was not a party. Opp. at 5. However, when a court enjoins enforcement of a regulation, in virtually every case it does so with respect to the operation of the regulation itself, not to its application to a particular party. Otherwise, every individual affected by a regulation would have to join a lawsuit in order to receive the benefit of an injunction against enforcement of a regulation. This has never been the law. And once again, the Secretary contradicts himself, because he previously recognized that the effect of the Court's preliminary injunction <u>was</u> to enjoin enforcement of the rule generally, not just as to the

particular Plaintiffs.  After it was issued, Defendant objected to "the broad scope of the Preliminary Injunction, which bars the Secretary from applying the final anti-markup rule <u>even as to services provided by non-parties</u>…."  Motion to Reconsider at 7, n.3 (emphasis added).

## II. THE COURT PLAINLY HAD JURISDICTION TO ISSUE THE PRELIMINARY INJUNCTION, AND IT VALIDLY PREVENTED THE ANTI-MARKUP RULE FROM GOING INTO EFFECT UNTIL THE COURT'S MAY 5 DECISION.

The Defendant persists in rearguing an issue that the Court has already decided:  whether it had jurisdiction to issue the preliminary injunction under the All Writs Act and <u>Belbacha</u>.  The Court's finding that it did have jurisdiction under <u>Belbacha</u> and the All Writs Act was correct, and Plaintiffs have so argued in their Opposition to Defendant's Motion to Reconsider and in their Motion to Clarify or Amend Order.  Those arguments need not be repeated here.

Defendant does argue that "unlike the situation in <u>Belbacha,</u> where the purpose of injunctive relief was 'to preserve the status quo'" pending review, Plaintiffs sought to "<u>alter</u> the status quo, and to <u>prevent</u>" the application of the anti-markup rule.  Opp. at 8 (emphasis in original). However, as the Court is well aware, the "status quo" under these circumstances refers to the "status quo ante," the last uncontested state existing between the parties before the present dispute arose.  The revised anti-markup rule was a new regulation, which was promptly challenged in court by Plaintiffs.  Defendant changed the status quo by promulgating that regulation, and Plaintiffs sought to preserve the pre-existing status quo while this matter was litigated.  If Defendant's interpretation of the "status quo" were adopted, no party could ever preliminarily enjoin enforcement of a regulation, because a regulation must first be finally promulgated before it can be challenged in court, and as soon as that happened it would automatically create a new "status quo," according to Defendant.

The Court properly recognized that the "status quo" was the situation prevailing prior to implementation of the revised anti-markup rule, stating that the "injunction will merely maintain

the status quo." Memorandum Opinion (March 31, 2008) at 9.  Plaintiffs also note that at the time the preliminary injunction was issued, Defendant was prohibited from implementing the revised anti-markup rule (and recouping on any claims submitted) due to Defendant's own Motion to Endorse Proposal, and the Court's order of February 8, 2008, adopting that proposal.

## CONCLUSION

For the reasons stated above, and in the Memorandum in Support of Plaintiffs' Motion to Clarify or Amend Order, the Court should issue an appropriate clarification of its May 5, 2008, Order, as described in Plaintiffs' Motion to Clarify or Amend Order, and in the Proposed Order accompanying that Motion.

Respectfully submitted,

FULBRIGHT & JAWORSKI, L.L.P.

May 28, 2008

/s/ Dan M. Peterson
Dan M. Peterson
D.C. Bar No. 418360
Ashley E. Seuell
D.C. Bar No. 494170
Caroline Mew
D.C. Bar No. 467354
801 Pennsylvania Avenue N.W.
Washington, D.C. 20004
Telephone:  (202) 662-0200
Facsimile:  (202) 662-4643
Attorneys for Plaintiffs

Greg A. Cardenas
Byrne, Cardenas & Smitherman, LLP
5400 LBJ Freeway, Suite 1325
Dallas, TX 75240
Telephone:  (972) 371-5264
Facsimile:  (972) 371-5270
Of Counsel